# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

No. 15-1348V

Filed: April 3, 2017

| | |
|---|---|
| * * * * * * * * * * * * * | UNPUBLISHED |
| JEANNIE ONIKAMA, *mother of* I.O., *a minor*, | |
| | Special Master Gowen |
| Petitioner, | |
| | Interim Attorneys' Fees and Costs; |
| v. | Reasonable Hourly Rate; Forum |
| | Rate; Local Rate; Reasonable Hours |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Expended |
| | |
| Respondent. | |
| * * * * * * * * * * * * * | |

<u>Richard Gage</u>, Richard Gage, P.C., Cheyenne, WY, for petitioner.
<u>Camille M. Collett</u>, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On November 9, 2015, Jeannie Onikama ("petitioner") filed a petition on behalf of her minor child, I.O., pursuant to the National Vaccine Injury Compensation Program.[2]  Petitioner alleged that as a result of receiving hepatitis A, diphtheria, tetanus, and pertussis ("DTaP"), pneumococcal conjugate, varicella, and Haemophilus influenzae vaccines on November 20, 2012, I.O. suffered a seizure disorder and developmental delay.  See Petition at ¶¶ 4-7.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to 34 (2012) ("Vaccine Act" or "the Act").  All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

Following an initial status conference on February 24, 2016, petitioner was ordered to file an expert report by April 25, 2016.  Thereafter, petitioner requested and was granted four extensions of time, until July 27, 2016, to file her expert report.  Petitioner did not file a report and on August 17, 2016, filed a motion for interim attorneys' fees and costs.  Petitioner's motion states that petitioner's counsel, Richard Gage, plans to withdraw as counsel.  Memorandum in Support of Application for Payment of Attorneys' Fees and Costs ("Pet. Memo.") at 1. Petitioner requests a total of $13,647.24 in attorneys' fees and costs.  Petitioner's ("Pet.") Motion ("Mot.") at 1.  The rates billed by counsel are based on forum rates.  See Pet. Mot., Tab C-E.

On September 6, 2016, respondent filed a response to petitioner's fee motion. Respondent objected to the payment of interim fees and costs at this time, but stated that if and when it is appropriate for the special master to award fees and costs in this case, based on his judgment and experience in similar cases and his "overall sense" of what is reasonable for the work performed in this case to date, respondent believes reasonable attorneys' fees and costs would fall between $8,000.00 and $12,000.00.  Resp. Response at 1, 5-6.  Respondent "recommend[ed] that the special master exercise his discretion and determine a reasonable award for attorneys' fees and costs within that range."  Id. at 2 (internal footnote omitted).  With regard to Mr. Gage's hourly rate, respondent also stated that "other experienced Program petitioners and Mr. Gage himself, who practice law in less-populated states in the western United States have consistently been denied the forum rate by the Federal Circuit."  Id. (citing Masias v. Sec'y of Health & Human Servs., 634 F.3d 1283, 1288 (Fed. Cir. 2011) (holding that the special master did not err in awarding attorneys' fees to Mr. Robert Moxley at the local Cheyenne, Wyoming, rate) (Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1354 (Fed. Cir. 2011) (affirming the special master's decision awarding Mr. Gage local rates)).

A status conference was held on September 22, 2016, to discuss petitioner's fee motion. During the status conference, the undersigned directed petitioner to file a supplemental brief discussing the issue of whether Mr. Gage should be awarded the local Cheyenne, Wyoming, rate or the forum rate.  Order, filed Sept. 26, 2016, at 1.  The undersigned noted that in 2008, the Federal Circuit upheld a special master's decision awarding local rates to another attorney in Cheyenne, Wyoming, Mr. Robert Moxley.[3]  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008).  Therefore, petitioner was instructed to address "whether the Cheyenne, Wyoming rate has changed since Avera and provide support for such contention."  Order, filed Sept. 26, 2016 (emphasis in original).  During the conference, petitioner's counsel contended that "there is not a great deal of fee shifting litigation in Wyoming to enable the provision of decisional data points."  Id.  Accordingly, the undersigned stated that petitioner could address attorney rates that have been set or approved by the United States District Court of Wyoming, by Wyoming state courts, and in neighboring jurisdictions such as Colorado.  Id. at 1-2.

On November 11, 2016, petitioner filed a supplemental memorandum responding to the September 26, 2016, Order, setting forth additional information to support petitioner's asserted local rates and demonstrate that local rates are not "very significantly different" than forum rates.

---

[3] The September 26, 2016, Order, stated that Avera addressed fees for Mr. Gage's firm.  As petitioner notes in her supplemental memorandum, Avera addressed fees for Mr. Moxley, of Robert T. Moxley, P.C., who left Mr. Gage's firm approximately two years prior to Avera.  Nevertheless, Avera did involve an analysis of local Cheyenne, Wyoming, rates.

Respondent filed a response to petitioner's supplemental memorandum on December 14, 2016. Petitioner filed additional documents in support of her attorneys' fees and costs on January 18, 2017. This matter is now ripe for adjudication.

## I. Interim Attorneys' Fees and Costs

Interim fee awards are permissible under the Vaccine Act. See Avera, 515 F.3d at 1352. A special master may award reasonable interim attorneys' fees and costs before judgment on an entitlement decision is entered, so long as the claim was brought in good faith and with a reasonable basis. § 15(e)(1); Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372, 1374-75 (Fed. Cir. 2010). The Federal Circuit has identified examples of circumstances under which an award of interim fees may be appropriate, which include "cases where proceedings are protracted and costly experts must be retained," or where petitioner would otherwise suffer an "undue hardship." Avera, 515 F.3d at 1352. However, Avera has been interpreted as allowing special masters broad discretion in determining whether to award interim fees. See, e.g. Al-Uffi v. Sec'y of Health & Human Servs., No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015) (internal citations omitted); Bear v. Sec'y of Health & Human Servs., No. 11–362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (Avera provides only "*examples* and *general guidance* concerning when interim fees and costs might be awarded, leaving the special masters broad **discretion** to consider many factors in considering whether an interim award is appropriate in a particular case") (emphasis in original); Kirk v. Sec'y of Health & Human Servs., No. 08–241V, 2009 WL 775396, at *1 (Fed. Cl. Spec. Mstr. Mar. 13, 2009) (reading Avera to set a "broad, discretionary vehicle for ensuring that petitioners are not punished financially while pursuing their vaccine claim").

### a. Good Faith and Reasonable Basis

Respondent does not dispute that this claim was filed in good faith and with a reasonable basis. "Good faith" is a subjective standard and petitioners are entitled to a presumption of good faith. Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007); Grice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 121 (1996). The undersigned finds that this claim was brought in good faith.

With regard to reasonable basis, the Court of Federal Claims has held that the statutory language of 42 U.S.C. § 300aa-15(e)(1)(B) grants the special master "maximum discretion in applying the standard." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 402 (Fed. Cl. 2012). Many special masters and Court of Federal Claims judges have determined that the reasonable basis requirement is an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 303 (Fed. Cl. 2011); Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 286 (2014). Factors to be considered include factual basis, medical support, and the circumstances under which a petition is filed. Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at *6-9 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioner must furnish "some evidence" supporting the claims in the petition, but the evidentiary showing required is less than a preponderance of the evidence. Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660, at *1, *13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013).

In this case, petitioner filed extensive medical records that facially support the facts as set forth in the petition.  See, e.g. Pet. Ex. 1 at 42-43 (11/21/2012 ER visit for febrile seizures), 63 (chief complaint: seizures and developmental delay); Pet. Ex. 4 at 39 (documenting recurrent "spells of going limp with eyes open and staring" and history of global developmental delay). Petitioner filed four motions for extensions of time to file an expert report, in which petitioner indicated that her expert was very close to producing a final report.  On April 25, 2016, petitioner stated that her expert was "reviewing the records in this case."  On June 10, 2016, petitioner stated that her expert report "[was] not yet complete" but that she anticipated having it filed within two weeks.  On June 24, 2016, petitioner stated that her expert "[was] awaiting further information from Petitioner which she is attempting to get," and again stated that petitioner anticipated having an expert report filed within two weeks.  On July 7, 2016, petitioner again stated that "Petitioner's expert is awaiting further information from Plaintiff which she has not received as of this date," and requested an additional twenty days to file the report.  No expert report was filed and petitioner filed a motion for interim attorneys' fees on August 17, 2016. The motion indicated that Mr. Gage planned to withdraw as counsel, but did not detail the reasons for Mr. Gage's planned withdrawal, and it is unclear why no expert report was ever filed. Petitioner's requested costs include those for Dr. Marcel Kinsbourne, whose invoice indicates that he spent two hours for "[r]eview of medical literature and preparation of report."  Given the fact that no expert report was filed, the undersigned infers that petitioner has been unable to secure an expert report at this time.  If so, Mr. Gage is appropriately withdrawing from representation.  Based on the representations made in petitioner's motions for extensions of time and the information in Dr. Kinsbourne's invoice, it appears that Dr. Kinsbourne initially indicated he would be able to provide an opinion on petitioner's behalf but was ultimately unable to do so for unknown reasons.  The undersigned finds that this case had a reasonable basis throughout its pendency.  To the extent that Dr. Kinsbourne may have provided petitioner a preliminary opinion that undermines the reasonable basis of this case, petitioner's counsel is withdrawing at an appropriate time and will be awarded attorneys' fees for the duration of his work on this matter.

### b.  Timing of Interim Fees

Respondent objects to the payment of interim fees and costs at this time, and argues that the withdrawal of petitioner's counsel is not a sufficient basis for an award of interim attorneys' fees and costs under Avera.  Resp. Response at 2 (citing McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. at 301 ("[W]e view Avera to mean that some special showing is necessary to warrant interim fees, including but not limited to the delineated factors of protracted proceedings, costly experts, or undue hardships."))  Respondent states that petitioner has not identified any special showing to justify an award of interim attorneys' fees and costs under the particular circumstances of this case, as these proceedings have not been "protracted," no expert report has been filed or expert costs claimed, and petitioner has not made a showing that she needs payment of interim fees and costs to avoid an undue hardship.[4]  Id.

---

[4] Respondent also cites three other cases in which special masters have denied interim fee applications from Mr. Gage.  Resp. Response at 4-5 (citing Bigbee v. Sec'y of Health & Human Servs., No. 06-663V, 2012 WL 1238484 (Fed. Cl. Spec. Mstr. Mar. 23, 2012) (interim fees not warranted as case was ripe for a request for final award of attorneys' fees and costs); Heinzelman v. Sec'y of Health & Human Servs., No.

The undersigned finds an award of interim fees appropriate at this time based on the overall circumstances of this case. The circumstances set forth in Avera are "illustrative rather than exhaustive," and special masters may look at the overall circumstances present in a case. Hiland v. Sec'y of Health & Human Servs., No. 10-491V, 2012 WL 542683, at *5 (Fed. Cl. Spec. Mstr. Jan. 31, 2012 (citing Crutchfield v. Sec'y of Health & Human Servs., 2011 WL 3806351, at *6–8 (finding the overall circumstances of the case are appropriate for an interim award).

Circumstances that may warrant an award of interim fees are not limited to those described in Avera, and several cases have recognized the withdrawal of counsel is a circumstance under which an award of interim fees may be appropriate. See, e.g. Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 92 (2016) (the special master may consider whether the attorney has withdrawn or been discharged as a factor pertinent to awarding interim fees, particularly where there may be an indefinite delay until the matter is ultimately resolved); Woods v. Sec'y of Health & Human Servs., No. 10-377V, 105 Fed. Cl. 148, 154 (2012) ("The Special Master reasonably concluded that delaying a fee award to counsel who had ended their representation for an indeterminable time until the case was resolved sufficed to constitute the type of 'circumstances' to warrant an interim fee award."); Uscher v. Sec'y of Health & Human Servs., No. 15-798V, 2016 WL 3670518 (Fed. Cl. Spec. Mstr. June 15, 2016); Smirniotis v. Sec'y of Health & Human Servs., No. 14-617V, 2016 WL 859057, at *2 (Fed. Cl. Spec. Mstr. Feb. 12, 2016) ("paying attorneys when their service is complete is appropriate"); Bear v. Sec'y of Health & Human Servs., No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) ("the fact that counsel is withdrawing *can be one* important factor, supporting an interim award"); Hiland, 2012 WL 542683, at *6 ("[t]o the extent that the court in *McKellar* held that withdrawal of an attorney is not a circumstance in which an interim fee award is appropriate, the undersigned respectfully disagrees.").

In this case, petitioner's counsel has stated his intent to withdraw. Pet. Memo at 1. During the September 26, 2016, status conference held to discuss petitioner's fee motion, Mr. Gage indicated that petitioner is deciding whether to proceed *pro se* or retain new counsel. See Order, filed Sept. 26, 2016. On November 8, 2016, in response to the notice that the statutory 240-day period for the special master's issuance of a decision in the case had expired, petitioner filed a notice of her intent to remain in the Program. See Order, filed July 6, 2016; Notice of Intent, filed July 8, 2016. Thus, although Mr. Gage plans to withdraw, it appears likely that petitioner plans to continue pursuing this case in some capacity. The petition has been pending fifteen months, and it is not known how long this claim will take to ultimately resolve given that petitioner intends to proceed with her claim but has not yet indicated whether she will be seeking to retain new counsel or proceed *pro se*. The undersigned finds it reasonable to award attorneys'

---

07-01V, 2012 WL 1119389 (Fed. Cl. Spec. Mstr. Mar. 13, 2012) (denying a third award of interim fees and costs while an appeal of the amount of compensation awarded on entitlement was pending because petitioner did not establish the special circumstances needed for such an award); Stone v. Sec'y of Health & Human Servs., No. 04-1041V, 2011 WL 7068955 (Fed. Cl. Spec. Mstr. Nov. 14, 2011) (denying a second award of interim fees while appeal of entitlement decision pending). The cited cases, however, present different factual circumstances from the present case. Here, I find that the overall circumstances justify an interim fee award.

fees and costs at this juncture, rather than delay the award for an undetermined amount of time pending the ultimate resolution of the case.

## II. Reasonable Attorneys' Fees and Costs

"[T]he determination of the amount of reasonable attorneys' fees is within the special master's discretion," and Special Masters are afforded "wide discretion" in determining the reasonableness of a petitioner's request for reasonable attorneys' fees and costs. Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cl. 1993); Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Under the Vaccine Act, a reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Avera, 515 F.3d at 1347-48. In determining an award of attorneys' fees, a court should generally use the forum rate, i.e., the District of Columbia rate. Id. at 1348. However, an exception to the forum rule applies where the bulk of an attorney's work is performed outside of the forum, and where there is a "very significant" difference in compensation rates between the place where the work was performed and the forum. Id. at 1349 (citing Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Petitioner argues that there is not a very significant difference between local rates in Cheyenne, Wyoming, and forum rates, and that the award of attorneys' fees in this case should therefore be based on forum rates. Pet. Mot. at 1. Respondent asserts that there is a very significant difference between local and forum rates, and that petitioner's attorney should therefore be compensated at local rates. See Resp. Response to Pet. Supp. Memo. ("Resp. Second Response") at 11.

### a. Local Rates

Petitioner asserts that Mr. Gage's local rate is approximately $350 to $425 per hour, the same as the forum rate range found reasonable for attorneys with more than 20 years of experience in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Pet. Memo. at 4. To support this rate range, petitioner cited the hourly rate paid Mr. Gage in two recent non-vaccine cases and cited several cases from the United States District Court for the District of Colorado in which attorneys' fees were awarded pursuant to fee-shifting provisions. Petitioner asserts that Cheyenne rates awarded to Mr. Gage and Mr. Robert Moxley in past Program cases were "artificially low." See Pet. Memo. at 4; Pet.

Supp. Memo. at 3. Therefore, petitioner's contention is that Mr. Gage's 2016 local rate cannot be established by simply applying a growth factor to previously awarded Cheyenne rates.

Respondent, on the other hand, asserts that "petitioner has not provided support for the change in the Cheyenne local rate [since Avera] that is necessary for Mr. Gage to be awarded his requested forum rate," and asserts that Mr. Gage's local rate is approximately $300 per hour. Resp. Second Response at 6-7. For the reasons discussed below, the undersigned finds that Mr. Gage's reasonable local rate would be $311 per hour.

### i. Program Rates

Both petitioner and respondent note that Mr. Gage's local rates have been determined recently by other special masters in several Program cases. In Hall, the Federal Circuit affirmed the special master's decision awarding Mr. Gage a local rate of $240 per hour for 2008-2009. Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1354 (Fed. Cir. 2011). The Federal Circuit found that the special master in Hall "undertook a detailed analysis of reasonable local and forum hourly rates in Vaccine Act cases and other similar litigation." Id. at 1356. In 2014, Mr. Gage entered into a fee agreement with respondent to accept a 2014 hourly rate of $274 per hour.[5] Engels v. Sec'y of Health & Human Servs., No. 07-804V, 2014 WL 2199405, at *1 (Fed. Cl. May 2, 2014), supplemented, No. 07-804V, 2014 WL 4293699 (Fed. Cl. July 22, 2014). This agreement was reached following an ADR process, and the special master stated that "[t]hese rates are to be applied globally to other attorney fee motions filed by his firm, and are not limited to the request filed in this case." 2014 WL 2199405, at *1. Respondent urges that "[t]he rate agreed to by Mr. Gage [in Engels] is circumstantial evidence that goes to clarifying what a reasonable locality rate for Mr. Gage should be as he wouldn't have agreed to a rate that did not adequately or appropriately compensate him for his time." Respondent's Second Response at 6. Finally, petitioner states that most recently Mr. Gage was awarded a 2014-2015 rate of $285 per hour. Pet. Supp. Memo. at 4 (citing Carpenter v. Sec'y of Health & Human Servs., No. 13-628V, 2016 WL 1878438 (Fed. Cl. Spec. Mstr. Apr. 11, 2016)). The decision in Carpenter did not state the rate awarded, however. Rather, respondent recommended a general range for a fee award without noting specific objections to the rate billed, and the special master awarded the requested fees finding the overall amount reasonable.[6] Id. at *1.

Mr. Gage's local rates have also been recently examined in other cases not cited by the parties. In Auch v. Sec'y of Health & Human Servs., No. 12-673V, 2016 WL 3944701, at *12

---

[5] Paralegals were awarded a 2014 rate of $112 per hour. Engels, 2014 WL 2199405, at *1.

[6] Petitioner also cites Austin-Lemmon v. Sec'y of Health & Human Servs., No. 07-41V, 2011 WL 3555800 (Fed. Cl. Spec. Mstr. July 19, 2011) and Carroll v. Sec'y of Health & Human Servs., No. 04-1684V, 2011 WL 3678835 (Fed. Cl. Spec. Mstr. July 28, 2011) as examples of Program cases in which Mr. Gage has been awarded attorneys' fees. Pet. Memo. at 3-4. Petitioner states that the rate of $250 for 2011 awarded therein was artificially low. Id. Austin-Lemmon and Carroll, however, do not discuss the rate awarded because the fee motions were unopposed by respondent and, more importantly, do not specify the year for which the rate was awarded. Thus it is not possible to extrapolate from them in order to determine Mr. Gage's 2016 rate.

(Fed. Cl. Spec. Mstr. May 20, 2016), the special master awarded Mr. Gage a 2015 local rate of $300 per hour based on his experience and skill in the Program.  Applying a 3.7% annual growth rate, this would yield a 2016 rate of $311 per hour.[7]  In McErlean v. Sec'y of Health & Human Servs., No. 13-543V, 2016 WL 4575583 (Fed. Cl. Spec. Mstr. July 28, 2016), the special master declined to follow Auch and awarded Mr. Gage a 2013 local rate of $260 per hour.  The special master applied a 3.7% annual growth rate to find Mr. Gage's 2016 rate was $290 per hour.  Id. at *5.

In McCulloch, I applied a 3.7% annual rate of growth in attorneys' fees to adjust hourly rates for different years.  This percentage adjustment was based upon the Real Rate Report[8] submitted by respondent, and represents the annual rate of growth in attorneys' fees since the 2008 recession.  McCulloch, 2015 WL 5634323, at *16; see also Garrison v. Sec'y of Health & Human Servs., No. 14-762V, 2016 WL 3022076, at *3 (Fed. Cl. Spec. Mstr. Apr. 29, 2016), aff'd, 128 Fed. Cl. 99 (2016)).  I will apply the same rate of growth in the present case.  Applying a 3.7% annual growth rate to the rates awarded in Hall, Engels, Carpenter, Auch, and McErlean, Mr. Gage's 2016 local rate would be $309.50, $294.65,[9] $295.55, $311.10, or $290.00, respectively.

Local Cheyenne, Wyoming, rates were also examined in Avera and Masias.  In those cases, the Federal Circuit affirmed the award of local rates to Robert Moxley, Mr. Gage's former partner.  Petitioner asserts that the rates awarded to Mr. Moxley in these cases were artificially low, and also asserts that Mr. Gage should receive higher rates than Mr. Moxley.[10]  Pet. Supp.

---

[7] The special master in Auch applied an annual adjustment based on the CPI to determine Mr. Gage's rates for 2014, 2013, and 2012.  2016 WL 3944701, at *12.  Although some special masters have adjusted rates using the CPI, I adjusted rates according to the 3.7% annual rate of growth in attorneys' fees in McCulloch and Garrison.  See McCulloch, 2015 WL 5634323, at *16; Garrison, 2016 WL 3022076, at *3.

[8] The Real Rate Report was a study of attorney billing rates to corporate clients and stated in its executive summary that attorney rates have increased by an average of 3.7% since 2008.  See McCulloch, 2015 WL 5634323, at *9.  Prior to that the rate increase had been higher.  Id.

[9] The decision in Engel stated that the parties' agreement indicated that the 2015 hourly rates for Mr. Gage and the firm's paralegals should be determined by applying the U.S. Department of Labor, Bureau of Labor Statistics CPI Inflation Calculator to their 2014 hourly rates.  2014 WL 2199405, at *1 n3.  As discussed below, I find use of a 3.7% annual adjustment more appropriate.  However, because the parties in Engel agreed to use the CPI to calculate growth, I note that using the CPI Inflation Calculator to calculate Mr. Gage's 2016 rate based on a 2014 rate of $274 per hour, his 2016 rate would be $277.79.  United States Department of Labor, Bureau of Labor Statistics, CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (last visited Feb. 22, 2017).

[10] In the context of distinguishing himself from Mr. Moxley, Mr. Gage also states that at the time of the Masias decision, Mr. Moxley was being paid $220 per hour while Mr. Gage was being paid $250 per hour with respondent's consent.  Id. at 3-4 (citing Austin-Lemmon, 2011 WL 3555800; Carroll, 2011 WL 3678835).  Petitioner also submitted an affidavit from Mr. Moxley stating that he charges $300 per hour at the present time for his hourly criminal defense, estate planning, administrative hearing, and civil litigation.  Pet. Ex. 16.  As noted above, Austin-Lemmon and Carroll do not discuss the rate awarded

Memo. at 3. Petitioner states that when they practiced together over ten years ago Mr. Gage represented significantly more vaccine clients than Mr. Moxley and the disparity has increased since then. Pet. Supp. Mot. at 3. Mr. Moxley does not currently have any cases in the Program whereas Mr. Gage has 50. Id. The undersigned agrees that Mr. Gage has more Program experience than Mr. Moxley, and that his local rate would therefore be somewhat higher than Mr. Moxley's. However, it does not seem necessary to undertake an analysis of the differences between Mr. Gage and Mr. Moxley given that several past Program cases discussed above, and Hall in particular, determined local Cheyenne rates *for Mr. Gage*. Thus, rather than comparing Program rates awarded to different attorneys, the issue is whether petitioner has submitted evidence that the present local Cheyenne rate is higher than simply adjusting past Program rates awarded to Mr. Gage would suggest. Avera and Masias are useful insofar as they analyzed whether the difference between Mr. Moxley's local and forum rates was "very significantly different." Accordingly, Avera and Masias are discussed below in the context of the determination of what constitutes a "very significant difference" between local and forum rates.

As stated above, based on past Program rates awarded to Mr. Gage, it appears that his local 2016 rate would be between $290 and $311 per hour. Based on Mr. Gage's skill, experience, and reputation, the undersigned finds the high end of this range most appropriate. Accordingly, based on past Program cases, a reasonable local rate for Mr. Gage would be $311 per hour.

### ii.   Non-Program and District Court Cases

Petitioner asserts that the rates awarded in previous Program cases were "artificially low," and that therefore the undersigned should not simply adjust previously awarded rates to determine a reasonable local 2016 rate. To support a higher local rate, petitioner submitted evidence of Mr. Gage's hourly rate in two recent non-vaccine cases and cited several cases from the United States District Court for the District of Colorado in which attorneys' fees were awarded pursuant to fee-shifting rules or statutory provisions.

Mr. Gage was paid a rate of $300 per hour for his work representing a plaintiff in a 2009-2010 Fair Labor Standards Act case in Cheyenne, Wyoming, pursuant to the fee shifting provisions of the FLSA, which provide for attorneys' fees for the prevailing party. Pet. Memo. at 4-5 (citing Pet. Ex. 14, affidavit of opposing counsel);[11] Pet. Supp. Memo. at 1. During the

---

because the fee motions were unopposed by respondent. Further, the decisions do not indicate what year(s) that rate was awarded for so it is unclear how to compare the rates in Austin-Lemmon and Carroll to the 2008 rate of $220 per hour awarded in Masias. In fact, in petitioner's first memorandum she states that the rate was awarded for 2011, so it appears that a direct comparison between the $220 and $250 rate would not be appropriate. See Pet. Memo. at 4. Hall, in which the special master thoroughly analyzed local rates, was decided in 2011 and awarded Mr. Gage a local rate of $240 per hour for 2008-2009. 640 F.3d at 1354. Comparison of Mr. Gage and Mr. Moxley using other unreasoned cases is not helpful.
[11] Petitioner's initial memorandums cite to "ex. 1, affidavit." No such exhibit appears to have been filed with the August 17, 2016, memorandum, but Exhibit 14, filed January 18, 2017, is an affidavit from Stephen Kline, defendant's counsel on the 2009-2010 FLSA case in which Mr. Gage represented plaintiff. See Pet. Ex. 14.

same time period, Mr. Gage also worked as local Wyoming counsel for defendant in an asbestos exposure case, for which he was paid at a rate of $300 per hour.  Pet. Supp. Memo. at 1 (citing Pet. Supp. Memo., Ex. 2, affidavit of co-counsel).  It does not appear that the fees in the asbestos case were awarded pursuant to a fee-shifting provision or were otherwise contingent in nature.  Rather, "[d]uring his involvement in that case Richard Gage was paid at a rate of $300 per-hour."  Pet. Supp. Memo., Ex. 2.

Petitioner cites four cases from the United States District Court for the District of Colorado in support of Mr. Gage's local rate.  Pet. Supp. Memo. at 2 (citing Center for Biological Diversity v. United States Fish and Wildlife Serv., 703 F.Supp.2d 1243, 1249 (D. Colo., Apr. 1, 2010); Nero v. American Family Mutual Ins. Co., 2013 WL 5323191 (D. Colo., Sept. 23, 2013); MemoryTen, Inc. v. LV Admin. Servs., Inc., 2013 WL 1154492, at *3 (D. Colo., Mar. 19, 2013); Nova Leasing, LLC v. Sun River Energy, Inc., 2013 WL 1302265, at *3 (D.Colo. Mar. 28, 2013).  In Center for Biological Diversity, the plaintiff was awarded attorneys' fees pursuant to the Freedom of Information Act (FOIA), which provides for the award of attorney fees and costs in any case in which "the complainant has substantially prevailed."  703 F.Supp.2d at 1246 (citing 5 U.S.C. § 552(a)(4)(E)).  Plaintiff's attorney, "an experienced environmental litigator with over 17 years of legal experience," was awarded $400 per hour.  Id. at 1249.  In Nero, attorneys' fees were awarded pursuant to Colorado statutory provision § 13–17–201, which provides for the defendant's attorneys' fees in tort cases where such case is dismissed on certain motions of the defendant prior to trial.[12]  2013 WL 5323191, at *8.  That statutory provision is intended to award attorneys' fees "in a narrow category of baseless tort cases, namely those cases that [are] so lacking in substance that they could not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  Krystkowiak v. W.O. Brisben Co., Inc., 90 P.3d 859, 869 (Col. 2004).  Defendant's attorney with over 35 years of experience litigating complex commercial litigation was awarded $500 per hour.  Id. at *9.  In MemoryTen and Nova Leasing, attorneys' fees were awarded pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, which provides for attorneys' fees incurred by a movant for a successful motion to compel discovery.  MemoryTen, 2013 WL 1154492, at *1; Nova Leasing, 2013 WL 1302265, at *1.  In MemoryTen, a range of $465 to $495 was found reasonable for an attorney with more than 25 years of experience in complex commercial litigation, including securities fraud, business torts, and corporate governance disputes.  MemoryTen, 2013 WL 1154492, at *3.  In Nova Leasing, a rate of $450 per hour was awarded to an attorney with more than 20 years of experience in matters involving business litigation, including securities fraud.  Nova Leasing, 2013 WL 1302265, at *2.  These Colorado cases all involved the determination of reasonable rates based on the prevailing market rate in the relevant community for attorneys with comparable skill and experience.  Center for Biological Diversity, 703 F.Supp.2d at 1250; Nero, 2013 WL 5323191, at *9; MemoryTen, 2013 WL 1154492, at *2; Nova Leasing, 2013 WL 1302265, at *2.

In vaccine cases, a reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Avera, 515 F.3d at 1347-48.  Thus, before using the above-cited cases as evidence of petitioner's local rate, the undersigned must first determine whether they constitute evidence of the prevailing rates in the relevant "community" for "similar services."

---

[12] Unless the motion is treated as one for summary judgment.  Krystkowiak, 90 P.3d at 869.

## The Relevant Community

Respondent states that petitioner provided no support for citing cases from the United States District Court, District of Colorado, which is located in Denver, and contends that Cheyenne, Wyoming and Denver are not similar localities.  Resp. Response to Pet. Supp. Memo. at 5.  Cheyenne, Wyoming, is located only a few miles north of the Colorado border and approximately 100 miles north of Denver.  However, it is true that Denver is a larger metropolitan area than Cheyenne.  In 2015, Cheyenne had an estimated population of approximately 63,335 whereas Denver had an estimated population of 682,545.[13]  In addition, a comparative cost of living calculator for metropolitan areas, which I also consulted in McCulloch and Garrison, shows a cost of living that is 18.10% greater in Denver than in Laramie, Wyoming.[14]  Cheyenne is not listed in the calculator, but Laramie is a city approximately 50 miles northwest of Cheyenne with a population of 32,158.[15]  In Garrison, petitioner's counsel from Twin Falls, Idaho, submitted evidence of rates in Boise, Idaho, which the undersigned found to be appropriate points of reference for determining counsel's local rate.  2016 WL 3022076, at *5.  However, the difference in cost of living between Twin Falls and Boise was only 0.33%.  Id. at *4.  Boise is located approximately 125 miles northwest of Twin Falls, and in 2015 had an estimated population of 218,281 versus Twin Falls' 47,468.[16]  Accordingly, it seems likely that the difference in attorneys' fees between Denver and Cheyenne is somewhat greater than the difference in attorneys' fees between Boise and Twin Falls.  With this in mind, however, I find that cases from the United States District Court, District of Colorado, located in Denver, could constitute *some* evidence of the rates in the relevant community for purposes of determining prevailing rates in Cheyenne, Wyoming, particularly when counsel was unable to find other cases awarding fees in Wyoming.

## Similar Services

When determining the appropriate forum rate for vaccine cases in McCulloch, I noted that Laffey Matrix rates may more precisely target appropriate forum rates than average Washington attorney fee rates, which were considerably higher.[17]  McCulloch, 2015 WL

---

[13] United States Census, QuickFacts, at http://www.census.gov/quickfacts/table/PST045215/5613900/accessible (last visited Feb. 17, 2017).

[14] The Cost of Living Calculator, at http://www.bankrate.com/calculators/savings/moving-cost-of-living-calculator.aspx (last visited Feb. 13, 2017).

[15] United States Census, QuickFacts, *supra* note 8.

[16] Id.

[17] Respondent states that for purposes of determining fees, Vaccine Act litigation is not analogous to complex litigation.  Resp. Second Response (citing Rodriguez v. Sec'y of Health & Human Servs., 632 F.3d 1381 (Fed. Cir. 2011)).  In Rodriguez, the issue presented was whether vaccine forum rates should be determined by applying the Laffey Matrix, or "whether the rate should be determined by considering a variety of factors, which may or may not include the Laffey Matrix."  632 F.3d at 1384.  The Federal

5634323, at *17-18.  In <u>McCulloch</u>, I used the Laffey Matrix as a guidepost, but not as prima facie evidence of the appropriate rate.  <u>See id.</u> at *16 n.32  ("Laffey Matrix rates are not awarded or considered as a *prima facie* Vaccine Act forum rate here, but its structure is useful for comparative purposes and its rates are considered here as one of multiple factors in determining a reasonable rate").

The Laffey Matrix was originally developed to evaluate fees in a complex employment discrimination case, and has since been republished annually by the United States Attorney's office for the District of Columbia for use in fee-shifting cases.[18]  <u>See</u> <u>Laffey v. Northwest Airlines, Inc.</u>, 572 F.Supp. 354 (D.D.C. 1983), <u>affirmed in part, reversed in part on other grounds</u>, 746 F.2d 4 (D.C.Cir. 1984).  The matrix is intended to be used in cases in which a fee shifting statute permits the prevailing party to recover reasonable attorneys' fees.[19]  The explanatory note to the updated Laffey Matrix references Civil Rights cases, Freedom of Information Act cases, and Equal Access to Justice Act cases by way of example.  *USAO Attorney's Fees Matrix—2015—2017 Explanatory Notes,* available at https://www.justice.gov/usao-dc/civil-division (last accessed Feb. 21, 2017).

In <u>McCulloch</u>, I explained:

> It is true that before fees are awarded in fee shifting cases there is the requirement that the case be won, that negligence or some other form of liability be proven (in addition to causation in personal injury cases), and that those cases include the array of available discovery devices provided under the Federal Rules of Civil Procedure.  However, it should be noted that procedural tasks such as depositions and motions result in the billing of many additional hours, and thus the ultimate compensation in those cases is raised relative to vaccine cases by virtue of the number of hours billed rather than necessarily the hourly rate.

---

Circuit upheld the decision of a special master.  <u>Id.</u> at 1385 ("As the special master found, Vaccine Act litigation . . . is not analogous to 'complex federal litigation' as described in *Laffey* so as to justify use of the Matrix instead of considering the rates charged by skilled Vaccine Act practitioners.").  The undersigned emphasizes that here, as in <u>McCulloch</u>, rates from other litigation cases are considered as *one* factor that may shed light on reasonable rates, along with rates awarded counsel in prior Program cases, and rates awarded comparably skilled practitioners in Wyoming.

[18] The Laffey Matrix methodology has been revised starting with the 2015-2016 year, and the matrix is now titled the "USAO Attorney's Fees Matrix."  *USAO Attorney's Fees Matrix—2015—2017*, available at https://www.justice.gov/usao-dc/civil-division (last accessed Feb. 21, 2017).

[19] As discussed below, the forum rates established in <u>McCulloch</u> took into account the fact that Laffey Matrix rates included a risk premium, as the fee shifting under the relevant statutes did not occur unless a case was won, whereas an attorney in the Vaccine Program is entitled to an award of attorneys' fees even if petitioner is not awarded compensation as long as the claim was brought in "good faith" and with a "reasonable basis."  2015 WL 5634323, at *18; 42 U.S.C. § 300aa-15(e)(1).

Id.  In vaccine cases, petitioner does not need to prove negligence or a constitutional violation, but does need to address difficult issues of causation.

In Garrison, petitioner's counsel submitted several District Court civil rights cases where attorneys' fees were awarded to the prevailing party under fee shifting statutes, which were "squarely within the type of cases to which Laffey Matrix rates would apply in Washington, D.C.," as well as breach of contract actions where a fee shifting statute provided for the award of attorneys' fees to the prevailing party, a similar type of fee shifting statute to the Laffey Matrix. 2016 WL 3022076, at *5.  In using these cases for comparison, however, I found them appropriate points of comparison not because they were comparable to Laffey Matrix cases, but because I found the cited cases to be generally of the same complexity as a **vaccine case**, and they provided useful data for the Idaho District Court as to reasonable fees in that area.  Id. (emphasis added).

In the Colorado cases cited by petitioner here, however, most of the fees awarded were not to plaintiffs' attorneys' as compensation for representing a successful party.  Rather, with one exception the fees were imposed as sanctions for discovery violations or for bringing a frivolous claim.  Nero involved individual and putative class action claims for breach of contract, fraudulent concealment, negligent misrepresentation, bad faith breach of contract, and violations of the Colorado Consumer Protection Act.  2013 WL 5323191, at *1.  Plaintiff's claims were dismissed for failure to state claims pursuant to Fed. R. Civ. Pro. 12(b)(6).  Id.  Attorneys' fees were awarded pursuant to a Colorado statutory provision that provides for the defendant's attorneys' fees in certain tort cases where the case is dismissed on motion of the defendant prior to trial.  Thus, Nero does not involve the type of fee-shifting statute contemplated by the Laffey/USAO Matrix in that it provides for the award of attorneys' fees "in a narrow category of baseless tort cases," with the intention to discourage unnecessary litigation, and thus the attorneys' fees awarded thereunder have an element of the punitive.  Krystkowiak, 90 P.3d at 869.

MemoryTen involved claims surrounding a breach of subscription agreement, unfair competition, unjust enrichment, and a declaration that the defendants had "waived their rights to obtain and acquire collateral" pursuant to certain loan agreements.  2013 WL 1154492, at *1. The defendants counterclaimed for abuse of process, fraud, breach of fiduciary duty, and violation of the Colorado Uniform Fraudulent Transfer Act.  Id.  As discussed above, the attorneys' fees were awarded when plaintiff failed to produce documents during discovery.  Id. Nova Leasing involved claims that defendant "engaged in a fraudulent scheme to block Nova from transferring and selling 1.2 million shares of [defendant's] stock," and involved violation of multiple federal regulations and state statutory provisions.  Defendant asserted counterclaims for unjust enrichment, breach of contract, promissory estoppel, breach of fiduciary duty and fraud, and conspiracy.  Again, attorneys' fees were awarded when the court "found that [defendant] had engaged in abusive litigation tactics and bad faith in connection with its discovery obligations." 2013 WL 1302265, at *3.  In MemoryTen and Nova Leasing, attorneys' fees were awarded pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, which provides for attorneys' fees incurred by a movant in making a successful motion to compel disclosure or discovery.  MemoryTen, 2013 WL 1154492, at *1; Nova Leasing, 2013 WL 1302265, at *1. Fees awarded under FRCP 37(a)(5)(A) are different from those awarded under a fee-shifting

provision permitting attorneys' fees for the prevailing party.  Although an award of fees pursuant to FRCP 37(a)(5)(A) requires that a party's motion to compel discovery be granted (or that the disclosure or requested discovery is provided after the motion was filed), it does not involve a party prevailing on the underlying claim.  Further, like fees awarded against a party pursuing frivolous litigation, the fees awarded for failure to comply with orders have an element of the punitive in them.  Vaccines cases do not have such an element.

Petitioner did not submit any detail regarding the underlying claims or procedural history of the FLSA and asbestos cases that Mr. Gage worked on, other than affidavits that confirm his rate.  In the FLSA case, Mr. Gage's fees were awarded pursuant to the FLSA provision that provides for attorneys' fees for the prevailing party, of the type contemplated by the Laffey/USAO Matric.  Pet. Memo. at 4-5.  In the asbestos case, Mr. Gage appears to have been paid a flat hourly rate.  Local counsel work usually represents less demanding type of work than is required of lead counsel in a vaccine case.  Finally, Center for Biological Diversity concerned the withholding of documents in a FOIA response.  703 F.Supp.2d at 1245, 1248.  The plaintiff was awarded attorneys' fees pursuant to the fee-shifting provisions of the Freedom of Information Act (FOIA).  FOIA cases are specifically referenced in the explanatory note to the Laffey/USAO Matrix.

The undersigned finds that the asbestos and FLSA rates awarded Mr. Gage and Mr. Moxley's affidavit, stating that he currently charges $300 per hour for his hourly criminal defense, estate planning, administrative hearing, and civil litigation, provide the most reasonable reference points for determining Mr. Gage's 2016 local rate.  While the other Colorado cases submitted by Mr. Gage appear to suggest a higher rate, other than in Center for Biological Diversity, the fees awarded were essentially sanctions for failure to comply with discovery rules or for frivolous claims.  Further, the fees in all of the Colorado cases were awarded to attorneys in Denver, a larger metropolitan area then Cheyenne with a higher cost of living.  While it was not unreasonable for petitioner to cite Colorado cases in light of the dearth of authority on attorney fees in Wyoming, the Denver cases must be weighed with the above factors in mind.

Mr. Gage's asbestos defense work and Mr. Moxley's hourly rate are not contingent nor are they based on prevailing on the underlying claim so do not require adjustment for risk.  Adjusted by a 3.7% annual growth rate, the asbestos 2010 rate of $300 per hour would suggest a 2016 rate of $373.04 per hour.  Mr. Moxley's quoted rate of $300 per hour is for 2016.  Fees in the FLSA case, on the other hand, were awarded to Mr. Gage as the prevailing party and need to be adjusted to reflect the fact that they therefore include a risk premium.  In McCulloch, I concluded that the Laffey Matrix rates included a risk premium, as the fee shifting under the relevant statutes did not occur unless a case was won.  2015 WL 5634323, at *18.  In contrast, an attorney in the Vaccine Program is entitled to an award of attorneys' fees even if petitioner is not awarded compensation as long as the claim was brought in "good faith" and with a "reasonable basis."  See 42 U.S.C. § 300aa-15(e)(1).  For attorneys with more than 20 years of experience, the Laffey rate for 2014-2015 was $520 per hour.  Using the same experience-range frame work as the Laffey Matrix, I determined that an appropriate rate range for practitioners in the Vaccine Program with more than 20 years' experience was $350 to $425.  Id. at *19.  Thus, comparing the Laffey rate of $520 per hour for attorneys with 20 years' experience to the high end of the McCulloch range, $425 per hour, I effectively eliminated the risk premium by reducing the

Laffey rate by approximately 18.3% for vaccine cases.[20]  I applied this same risk reduction in Garrison to evaluate local rates based on United States District Court cases submitted by petitioner.  2016 WL 3022076, at *6.  If an 18.3% risk reduction is applied to reduce the rate awarded in the FLSA case, and an annual rate of growth of 3.7% is also applied to bring the 2010 rate to present, the 2016 rate would be $304.80.

### b.  Forum Rates

Petitioner requests a forum rate of $387.50 per hour for Mr. Gage.[21]  See generally Pet. Mot., Tab C.  Reasonable 2014-2015 forum rate experience-based ranges were recently set by the undersigned in McCulloch.  2015 WL 5634323.  In McCulloch, I found $350 to $425 to be a reasonable forum rate range for attorneys with more than 20 years of experience, depending on the special master's judgment of the attorneys' years of experience in practice and in the Vaccine Program in particular, quality of advocacy in vaccine cases, and reputation in the legal community and community at large.[22]  McCulloch, 2015 WL 5634323, at *17-*19.  The range of $350 to $425 found in McCulloch was designed to allow considerable discretion to the special masters to determine an appropriate forum rate, and contemplated a "multi-factorial" analysis. McCulloch, 2015 WL 5634323, at *17.

Mr. Gage was admitted to the bar in 1990, and thus has approximately 26 years of experience.  Pet. Mot. at 3, 6.  He has been practicing in the Program for the duration of his legal

---

[20] This calculation represents the percentage by which the Laffey Matrix rate was *reduced* to arrive at vaccine case rates:

$$\textbf{\% decrease = [100 (Laffey rate – Vaccine rate)] / Laffey rate}$$

After McCulloch, the Laffey Matrix methodology was revised starting with the 2015-2016 year, and the matrix is now titled the "USAO Attorney's Fees Matrix."  The new matrix has a category for 21-30 years of experience and a separate category for 31+ years of experience.  The rate for attorneys with 21-30 years of experience for 2015-2016 is $530.  Id.  Because the Laffey Matrix annual rate increases were calculated using the CPI-U, the USAO Matrix annual rate increase is calculated using the PPI-OL, and McCulloch applied a 3.7% annual increase based on the rate of growth in attorneys' fees, the percentage risk premium reduction varies depending on what years are used for comparison.  For example, comparing the 2016 USAO matrix rate of $530 per hour to an adjusted 2016 McCulloch rate of $441 per hour (a 3.7% growth rate applied to the 2015 rate of $425 per hour), the risk premium for the USAO rate is 16.8%, slightly lower than the 2015 risk premium of 18.3%.  Nevertheless, I find that 18.3% is a reasonable risk premium to apply for all years.

[21] In her supplemental memorandum, petitioner states that the forum rate is approximately $400 per hour. See generally Pet. Mot., Tab C; Pet. Supp. Memo. at 2, 3.  Respondent compares Mr. Gage's local rate to a forum rate of $400 per hour, a rate "at the high end of the range for attorneys with experience similar to that of Mr. Gage."  Respondent's Second Response at 7.

[22] Since McCulloch, the Office of Special Masters posted a forum rate schedule, which states that for 2015-2016, the appropriate rate range for an attorney with 20-30 years of experience is $350 to $415 per hour.  See http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2015-2016.pdf.  For purposes of this decision, the undersigned relies on the rate ranges as set forth in McCulloch.

career, including as a summer intern in 1988.  Id. at 3.  Mr. Gage states that he presently has over 50 active Program cases and estimates that he has had more than 500 total cases in the Program. Id. at 4.  Petitioner argues that Mr. Gage is entitled to a rate on the high end of the forum rate range for attorneys with similar experience because of his substantial experience in the Program and the complex nature of Mr. Gage's cases.  Id. at 6.  Accordingly, petitioner's counsel billed at a rate of $387.50 per hour, which is the median of the McCulloch forum rate range for attorneys with more than 20 years of experience.  Petitioner also notes that this rate was recently awarded to Curtis Webb, a Program attorney in Twin Falls, Idaho, whose rates have "mirrored [Mr. Gage's] for a number of years."  Pet. Memo. at 6 (referencing Garrison v. Sec'y of Health & Human Servs., No. 14-762V, 2016 WL 3022076 (Fed. Cl. Spec. Mstr. Apr. 29, 2016), aff'd, 128 Fed. Cl. 99 (2016)).  The undersigned agrees that Mr. Webb has similar years of overall legal experience to Mr. Gage, similar experience with vaccine cases, and a similar reputation for quality of work in the Program.  See Garrison 2016 WL 3022076, at *8 (stating that Mr. Webb has 31 years of experience in the legal profession, 27 years of experience representing more than 275 petitioners in the Program, and Special Masters have noted that his work is of high quality). Accordingly, I find that a reasonable forum rate for Mr. Gage would be $387.50 per hour.

### c.  Local Versus Forum Rates

Petitioner argues that there is not a very significant difference between the local Cheyenne, Wyoming, and Washington, D.C., forum rates, and that petitioner's counsel should therefore receive forum rates.  In support of her position, petitioner cites McCulloch, 2015 WL 5634323 and Garrison, 2016 WL 3022076, aff'd, 128 Fed. Cl. 99.  In McCulloch, I determined reasonable 2014-2015 forum rates in the context of a fee award to the Boston firm Conway, Homer & Chin-Caplan.  See 2015 WL 5634323, at *19.  In Garrison, I found that Curtis Webb, of Twin Falls, Idaho, was entitled to forum rates because local Twin Falls rates were not "very significantly different" than the McCulloch rates.  See Garrison, 2016 WL 3022076, at *7. Petitioner states that "[i]f the Special Master were to apply the reasoning of [McCulloch and Garrison] to this case, then petitioner's attorney should receive forum rates."  Pet. Mot. at 1-2.

As petitioner notes, in Davis County, the local rate was "approximately 70% higher" than the local rate and in Avera, the requested forum rate of $598 per hour was "nearly three times" the local rate of $200 per hour.[23]  Pet. Memo. at 3; Pet. Supp. Memo. at 5; Davis County, 169 F.3d at 757; Avera, 515 F.3d at 1349-50.  In Masias, the difference between the local rate of $220 and the forum rate of $350 was 59%.  634 F.3d at 1285-87.  In contrast, in Garrison, the difference between the local and median forum rate was only 18.5%.  2016 WL 3022076, at *7. In finding that the 18.5% difference was not "very significant," the undersigned stated:

> In Avera, the Federal Circuit did not say that the forum rate should
> be used except when the local rate is "different" or even
> "significantly different."  Rather, the court said the forum rate

---

[23] The undersigned notes that in Avera, the difference between local and forum rates was based on the *requested* forum rate, not a determination as to what Mr. Moxley's forum rates actually would be.  Cases following Avera, however, have generally based their analysis on a determination of a reasonable forum rate.

> should be used except where the local rate is "*very significantly different.*" The cases in which very significant differences have been found were based on rate differentials higher than the difference in this case, as explained above.

Id. Petitioner asserts that like in Garrison, Mr. Gage's local rate is "different" from the forum rate, but not significantly so, and he should therefore be awarded forum rates. Pet. Memo. at 5-6.

In their briefs, the parties present several different calculations of the difference between local and forum rates, which result in inconsistent percentage difference calculations. In her first memorandum, petitioner compares the median forum rate for attorney's with more than 20 years of experience, $387.50 per hour, to a local rate of $295.55 based on applying a growth rate to the 2014-2015 local rate of $285 per hour awarded in Carpenter. Pet. Memo. at 5. Petitioner concludes that the median forum rate is 24% greater than Mr. Gage's local rate. Id. However, petitioner's calculation of the difference between the local and forum rate was not performed consistently with the formula used in Garrison: **% increase or "difference" = [(forum rate - local rate) / local rate] 100.** 2016 WL 3022076, at *7 n.12. As I stated in Garrison:

> In Davis County, the court determined that the forum rate was 70% *higher* than the local rate, and in Avera the court determined that the forum rate was nearly three times *higher* than the local rate. In Masias, where the local rate was $220 per hour and the forum rate was $350 per hour, the special master found that there was a 59% difference between local and forum rates. These cases calculate the "difference" in rates based on the percentage by which the forum rate is an *increase* over the local rate.

Id. If the correct Garrison formula is used, the difference between a local rate of $295.55 and a forum rate of $387.50 is 31%. Respondent, on the other hand, contends that the local rate supported for Mr. Gage is $300 per hour, and that there is a significant difference between a local rate of $300 per hour and a forum rate of $400, a forum rate at the high end of the range for attorneys with experience similar to Mr. Gage's. Respondent's Second Response at 7. Using the Garrison formula, the difference between a local rate of $300 per hour and a forum rate of $400 per hour is 33.33%.

As discussed above, however, I have found that a reasonable local rate for Mr. Gage would be $311 per hour and a reasonable forum rate would be $387.50 per hour. Using the Garrison formula, the difference between the median and requested forum rate of $387.50 per hour and a local rate of $310 per hour is 25%. The difference between the forum rate asserted by respondent, $400 per hour, and a local rate of $311 is 28.62%. The difference between the highest end of the McCulloch range for attorneys with more than 20 years of experience, $425 per hour, and a local rate of $311 per hour is 36.66%.

As I stated in Garrison, the rate differences in Davis County and Avera are clearly very significant, but those decisions do not provide guidance on where to draw the line as to what constitutes a "very significant" difference in less extreme cases. In Hall, the Federal Circuit

declined to set a bright line rule as to what constitutes a very significant difference and stated that special masters should "continue to rely on the evidence before them and their own trial experience in similar litigations in making such a determination." 640 F.3d at 1357. However, in <u>Auch</u>, the special master stated that "as a general rule of thumb, any difference over 25 percent meets the standard." 2016 WL 3944701, at *11. While no bright line rule as to what constitutes a very significant difference exists, in this case the evidence to support petitioner's assertion that the local rate is higher than past Program awards would suggest is relatively weak. As discussed above, the cases cited by petitioner largely involve very different fee-shifting situations than vaccine work and are from a significantly larger metropolitan area than Cheyenne, Wyoming. Given the evidence submitted and the decisions of other special masters regarding Cheyenne rates, the undersigned finds that petitioner has not demonstrated that rates in Cheyenne, Wyoming, rise to a level where they are not very significantly different than forum rates. Accordingly, Mr. Gage will be compensated at his local rate, $311 per hour.

### d.  Associate and Paralegal Rates

In addition to Mr. Gage's fees, petitioner also requests attorneys' fees for one associate and three paralegals. Pet. Mot. at 6-7. Petitioner requests a rate of $200 per hour for the associate, Dustin Lujan. Pet. Memo. at 6. Mr. Lujan graduated from law school in 2015 and is a member of the Wyoming bar. <u>Id.</u> In <u>Auch</u>, Mr. Lujan was awarded $145 per hour. 2016 WL 3944701, at *12. In that case, petitioner did not submit information about Mr. Lujan's background or experience necessary to establish a higher hourly rate. <u>Id.</u> Although petitioner has noted Mr. Lujan's experience, he has only been in practice for less than 2 years. Accordingly, the undersigned does not find reason to depart far from the rate of $145 per hour awarded in <u>Auch</u> for 2015. The undersigned finds a 2015 rate of $150 per hour reasonable for Mr. Lujan. Mr. Lujan only performed work on this case in 2015. Pet. Mot. Tab D, at 11.

Petitioner requests a rate of $135 per hour for paralegals Susan McNair and Brian Vance. Pet. Memo. at 6-7. Ms. McNair has an associate's degree as a paralegal and has worked at Mr. Gage's firm since receiving that degree three years ago. <u>Id.</u> at 7. Mr. Vance has an associate's degree as a paralegal and has worked at Mr. Gage's firm since receiving that degree two years ago. <u>Id.</u> In support of the requested paralegal rate of $135 per hour, petitioner submitted an affidavit from Matthew Micheli, a Wyoming attorney, stating that a rate of $125 per hour is "very reasonable for paralegal work in Wyoming," and that as corporate general counsel he has "routinely approved rates as high as $175 per hour." Pet. Supp. Memo., Ex. 3. Petitioner also submitted an affidavit from Wyoming attorney Michael Rosenthal, who states that the majority of work done by his paralegal is billed at $100 per hour, but in about 20% of cases is billed at $125 per hour. Pet. Ex. 15. Petitioner also submitted the NALA paralegal association 2016 National Utilization & Compensation Survey Report. Pet. Ex. 17. This report states that in the Rocky Mountains region, the average hourly billing rate in 2016 was $112 per hour. <u>Id.</u> at 2. Firms with 2-5 people billed an average rate of $129 per hour in 2016.[24] <u>Id.</u> Although petitioner argues that counsel should receive forum rates, and the requested paralegal rate of $135 appears to be based on forum rates, the submitted information bears on local Wyoming paralegal rates. None of the information submitted, however, notes the experience of the paralegals involved. In

---

[24] According to the website for Mr. Gage's firm, the firm has three attorneys. <u>See</u> Attorney and Staff Profiles,  http://www.richardgage.net/AttorneyProfiles.html (last visited Mar. 20, 2017).

Auch, the special master found that the requested $135 per hour rate was well outside the range for a paralegal practicing in Cheyenne.  2016 WL 3944701, at *14.  The special master awarded a rate of $112 per hour for all paralegal work performed in 2015.  Id. at *15.  It does not appear that petitioner submitted information regarding local paralegal rates in Cheyenne in Auch.  Rather, the awarded rates were based on petitioner's initial fee request, and were "apparently based on a local rate."  See id. at *14.  Based on the information submitted in this case and the experience and qualifications of Ms. McNair and Mr. Vance, the undersigned finds that a reasonable rate for their work performed on this case is $120 per hour.

Finally, petitioner requests $112 per hour for paralegal Anne Hess.[25]  Pet. Memo. at 7.  Ms. Hess has an associate's degree in business administration and a paralegal certification and has worked at Mr. Gage's firm for a short time.  Id.  Based on Ms. Hess' experience and qualifications, and the evidence submitted regarding paralegal rates, the undersigned finds a rate of $100 per hour reasonable.

### e. Hours

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service.  See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008).  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cl. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

A special master has "wide discretion in determining the reasonableness" of attorneys' fees and costs.  Pereira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).  In making reductions, a life-by-line evaluation of the fee application is not required.  Wasson, 24 Cl. Ct. at 484.  Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended.  Id.  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorneys' fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  Saxton, 3 F.3d at 1521.

Petitioner requests compensation for 11.30 hours of work performed by Mr. Gage, 1.60 hours of work performed by Mr. Lujan, 4.40 hours of work performed by Ms. McNair, 33.30 hours of work performed by Mr. Vance, and 1.00 hour of work performed by Ms. Hess.  Pet. Mot. Tab C-E.  Petitioner submitted an adequate billing log, which included the hours billed, date of service, and name of person providing the service.  See Pet. Mot. Tab E.  On review of petitioner's application and billing log, I find the number of hours expended reasonable.

### f. Costs

---

[25] In her memorandum, petitioner states that she requests a rate of $110 per hour, but Ms. Hess' work was actually billed at $112 per hour.  Pet. Mot. Tab E at 16.

The requirement that attorneys' fees be reasonable also applies to costs. <u>Perreira</u>, 27 Fed. Cl. at 34 ("Not only must any request for attorneys' fees be reasonable, so must any request for reimbursement of costs"). Petitioner requests $3,746.99 for attorneys' costs. Pet. Mot. Tab A, E. The requested costs consist primarily of medical record costs, copying costs, the filing fee, and the cost of expert review. Pet. Mot. Tab E. Upon review, I find the requested costs reasonable. Accordingly, as requested, I will award $3,746.99 in attorneys' costs.

## III.   Conclusion

Attorneys' fees and costs will be awarded as follows:

| | |
|---|---|
| Requested Attorneys' Fees: | $9,900.25 |
| Deductions: | $1,521.95 |
| Mr. Gage: $864.45 | |
| Mr. Lujan: $80.00 | |
| Ms. McNair $66.00 | |
| Mr. Vance $499.50 | |
| Ms. Hess $12.00 | |
| **Attorneys' Fees Awarded:** | **$8,378.30** |
| **Costs Awarded:** | **$3,746.99** |
| **<u>Total Fees & Costs Awarded:</u>** | **<u>$12,125.29</u>** |

**Accordingly, the undersigned awards:**

> **(1) A lump sum of $12,125.29 in the form of a check payable jointly to petitioner and petitioner's counsel of record, Mr. Richard Gage, for attorneys' fees and costs.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment forthwith.[26]

**IT IS SO ORDERED.**

s/Thomas L. Gowen
Thomas L. Gowen
Special Master

---

[26] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.